NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEVIN B. FINN (Cal. Bar No. 128072)
Assistant United States Attorney
DANIEL A. BECK (Cal. Bar No. 204496)
AARON C.G. CARPENTER (Cal. Bar No. 273446)
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2574
    Facsimile: (213) 894-7819
    E-mail: kevin.finn@usdoj.gov
          daniel.beck@usdoj.gov
          aaron.carpenter2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>POLARIS INDUSTRIES, INC., POLARIS SALES, INC., ERNEST YANEZ, JR., and Does 1 to 10,<br><br>    Defendants. | No. 2:19-cv-006830-ODW-KS<br><br>**FIRST AMENDED COMPLAINT**<br>FOR (1) NEGLIGENCE; (2) VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE §§ 13007-13009.1; (3) CAL. PUBLIC RESOURCES CODE §§ 4421 AND 36 C.F.R. § 261.5; (4) TRESPASS BY FIRE; AND (5) STRICT PRODUCTS LIABILITY<br><br>DEMAND FOR JURY TRIAL |

1

Plaintiff, United States of America, alleges as follows:

**PARTIES**

1.     Plaintiff United States of America ("United States") is the federal government, and brings this action on behalf of the United States Department of Agriculture, Forest Service ("Forest Service"), an agency and instrumentality of the United States.  Plaintiff United States, as sovereign, owns National Forest System lands in San Bernardino County that are under the supervision, control, administration, and protection of the Forest Service.

2.     On information and belief, Defendant Polaris Industries Inc. is a corporation, incorporated in Delaware and headquartered in Minnesota, and doing business in California and in the Central District of California. On information and belief, Defendant Polaris Sales Inc. is a subsidiary corporation of Polaris Industries Inc., headquartered in Minnesota, and doing business in California and in the Central District of California.

3.     On information and belief, Defendant Ernest Yanez, Jr. is an individual residing within the Central District of California. Doe defendants 1 to 10 are individuals and entities whose identity is currently not known who are responsible for the damages caused to Plaintiff as alleged herein.

**JURISDICTION AND VENUE**

4.     This action arises under Federal and California law, including Federal and California common law, California Health and Safety Code §§ 13007-13009.1, California Pub. Res. Code § 4421, California Civil Code §§ 1714(a) and 3287, Title 36 Code of Federal Regulations 261.5 and 261.10, and 31 U.S.C. §§ 3711 and 3717, for damages the United States incurred in connection with the "Pilot Fire," which ignited on National Forest System lands in San Bernardino County, California.

5.     The jurisdiction of this Court is invoked under 28 U.S.C. § 1345 in that the Plaintiff herein is the United States of America.

2

6.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b) in that the events giving rise to Plaintiff's claims occurred in the Central District of California, Defendants Polaris Industries Inc. and Polaris Sales Inc. are doing business within, and have sufficient contacts with, the Central District of California, and Defendant Yanez resides within the Central District of California.

## GENERAL ALLEGATIONS

7.     The Pilot Fire ignited on or about August 7, 2016. On information and belief, the Pilot Fire ignited on National Forest System lands within the San Bernardino National Forest in San Bernardino County, California.

8.     Forest Service Investigators determined that the Pilot Fire ignited when Defendant Ernest Yanez, Jr.'s 2015 Polaris RZR 1000 recreational off-highway vehicle ("ROV") malfunctioned and caught on fire, while on a National Forest System trail, and the fire spread to and ignited the adjacent vegetation. On information and belief, Ernest Yanez, Jr. purchased the subject RZR 1000 from Defendant Polaris Industries Inc. and/or Polaris Sales Inc. The resulting wildland fire burned, damaged and destroyed approximately 8,110 acres of the San Bernardino National Forest.

9.     Defendants Polaris Industries Inc. and Polaris Sales Inc. designed, manufactured, marketed, and sold the subject RZR 1000. Defendants' off-highway vehicles had a history of malfunctioning and starting fires and/or over-heating. The subject RZR 1000, and other similar off-highway vehicles that Defendant Polaris Industries Inc. manufactured, were the subject of various recalls and other notices based on their history of, and potential to, ignite fires. Defendants Polaris Industries Inc. and Polaris Sales Inc. knew that the RZR 1000 was defectively designed in a way that posed a serious risk of causing fires.

10.     Due to the 2013-2016 RZR 1000 vehicle's defective design, these vehicles may burst into flames while being driven. This defect constitutes a serious fire hazard that may injure members of the public and property owners.

3

11.     The Polaris.com/en-us/off-road-recalls/ webpage identifies various safety-related recalls and repairs that Polaris Industries Inc. has issued over the years for its defective 2015 RZR vehicle, including replacement of the vehicle's fuel vent line, an ECU calibration update, a voltage regulator replacement, a fuse box seal replacement, and the RZR heat shield replacement.

12.     In April of 2016, Polaris Industries Inc. announced a recall in cooperation with the U.S. Consumer Product Safety Commission (CPSC) for 133,000 Polaris Model Year 2013-2016 RZR 900 and RZR 1000 vehicles. The recall announcement admitted that "Polaris has received more than 160 reports of fires with the recalled RZR ROVs, resulting in one death of a 15 year old passenger from a rollover that resulted in a fire and 19 reports of injuries, including first, second, and third degree burns."

13.     The repairs suggested by the recalls, however, did not resolve the severe fire hazard created by the defective design of the RZR 1000 vehicles. Polaris RZR vehicles continued to ignite fires due to their fundamentally defective design. Furthermore, the announcements made by Polaris Industries Inc. and/or Polaris Sales Inc. did not adequately identify and warn about the extent of the defective product's fire hazard.

14.     On September 16, 2016, Polaris Industries Inc. issued an update to its 2016 full-year guidance in which the company stated that "[s]ince Polaris last updated its full-year guidance and hosted its investor day in July [of 2016], the Company has experienced additional RZR thermal-related issues and was unable to sufficiently validate the initially identified RZR Turbo recall repair, necessitating a more complex and expensive repair solution. As a result, the voluntary stop ride/stop sale notification issued on July 25, 2016, remained in place significantly longer than originally anticipated, delaying any sales of the highly-requested RZR Turbo vehicle. Also, given the additional RZR thermal issues, the Company revalidated many of its recently introduced model year 2017 ORV products, causing a delay in shipments of those vehicles."

15.     On December 19, 2017, the U.S. Consumer Product Safety Commission issued a joint statement with Polaris Industries Inc., giving additional warnings about the RZR vehicles' continuing fire hazard. The joint statement warned that "[t]he U.S. Consumer Product Safety Commission (CPSC) and Polaris are informing the public about fires on model year 2013–2017 Polaris RZR 900 and 1000 Recreational Off-Highway Vehicles (ROVs). These fires have caused death, serious injuries and property damage. Most of these vehicles were voluntarily recalled by Polaris in April 2016 to address fire hazards … However, users of the vehicles that were repaired as part of the April 2016 recall continue to report fires, including total loss fires. The 2017 RZRs were not included in the April 2016 recall, but these models have also experienced fires. The CPSC and Polaris continue to work together to ensure fire risks in these vehicles are addressed." This joint statement was issued over a year after the Pilot Fire.

16.     In 2018, the U.S. Consumer Product Safety Commission subjected Polaris Industries Inc. to a $27 million civil penalty for having failed to timely notify the agency about the dangers posed by its RZR and Ranger vehicles. *See* Polaris Industries Inc., Provisional Acceptance of a Settlement Agreement and Order, 83 FR 14447-01, 2018 WL 1605874 (April 4, 2018). The CPSC contended that the RZRs were defective insofar as they had an unreasonable risk of catching fire while consumers were driving them. The CPSC charged Polaris with having received information that its RZR vehicles could catch fire while consumers were driving them, posing fire and burn hazards. The CSPC contended that despite having information that reasonably indicated that the RZRs contained a defect that could create a substantial product hazard or create an unreasonable risk of serious injury to or death, Polaris failed to immediately notify CPSC of the defect or risk posed by its vehicles, as federal law had required.

17.     Polaris Industries Inc. agreed to pay the $27 million penalty. This was the heaviest penalty that the CSPC has ever imposed.

18.     In 2018, Polaris Industries Inc. issued yet another recall for Model Year 2014-18 Polaris RZR XP 1000 vehicles, identifying a problem in which the exhaust

5

1    silencer fatigues or cracks, which may lead to melting of nearby components or fire.

2          19.    The RZR 1000 vehicle's problems continued. On September 6, 2019, the

3    New York Times published an article entitled "The Polaris RZR, an Off-Road Thrill

4    That Can Go Up in Flames: The Polaris RZR, a vehicle for recreational use, has been

5    linked to scores of fires and four deaths. But its maker insists it is safe." The New York

6    Times article opened with a photograph that it described as showing a Polaris RZR

7    ablaze in an incident that caused third-degree burns to its driver.



20          20.    As the 2019 New York Times article reported, "From 2013 to 2018, Polaris

21   Industries issued RZR recalls 10 times for fire hazards, far more than for any competing

22   product. There have been more than 180 RZR fires, often leaving little more than

23   scorched earth and a skeletal metal frame. Four people have been killed and at least 30

24   others have been burned, according to a tally from recalls, lawsuits and reports to federal

25   regulators."

26          21.    As the 2019 New York Times article continued, "Even as Polaris has

27   repeatedly told customers that the vehicles are safe, dozens of YouTube videos show

28

6

RZRs burning. And a slew of litigation — including a lawsuit that is seeking class-action status, wrongful-death and personal-injury claims, and shareholder suits — contends that the company sought to conceal its knowledge of defective products."

22.     As the New York Times article observed, videos and photographs of burning Polaris RZR vehicles are readily located online.

23.     The New York Times article identified how the defective design of the RZR vehicle has created a fire hazard. "Nine years ago, as its competitors' models caught on, Polaris installed a souped-up engine that made the RZR faster and more powerful. The new engine has an exhaust pipe that is housed inches behind passengers and too close to key components without adequate ventilation, lawsuits have alleged, citing reviews by mechanical engineers."

24.     A class action has been filed in the District of Minnesota, case No. 0:18-cv-00939-WMW-DTS, asserting that fundamental defects in the RZR Vehicle have made it an unacceptably dangerous fire hazard. The First Amended Consolidated Class Action Complaint in the Minnesota action is 202 pages long. The first paragraph of that pleading alleges that "This action concerns recreational off-road vehicles ('ROVs') manufactured by Polaris that all suffer from a common design defect (the 'Excessive Heat Defect'). As described in detail below, the Excessive Heat Defect immediately affects all Class Vehicles because it degrades the Class Vehicles' component parts, reduces the Class Vehicles' service life, and makes them vulnerable to catastrophic fires."

25.     On information and belief, the 2015 Polaris RZR 1000 vehicle that ignited the Pilot Fire had an Excessive Heat Defect. In particular, Polaris Industries Inc. equipped this vehicle model with an unusually powerful engine that is located in a tight space with restricted airflow. The engine's exhaust manifold and header pipe exit the engine going forward towards the occupants, radiating intense heat into a confined area. Surrounding components of the vehicle, including vulnerable and/or combustible plastic, have little clearance from the hot exhaust and a complex series of heat shields that are

intended to ameliorate the heat problems, but which have failed to prevent its unacceptably severe fire risk.

26.     On information and belief, the extremely high temperatures generated by its engine and exhaust system in a confined area make the 2015 Polaris RZR 1000 vehicle unreasonably prone to ignite any combustible material that may be located nearby or adjacent to the exhaust region, including the vehicle's fuel system components. On information and belief, consumers do not expect the vehicle to present such a severe and unsafe fire hazard when being used in its intended manner, without having suffered a collision. In addition, the defective design of the Polaris RZR 1000 vehicle does not provide benefits that outweigh the risks inherent in the design.

27.     The 2006 patent application for the vehicle that became the RZR disclosed a weaker engine that exhausted to the right side of the vehicle. That design contrasts with the design that was later used for the 2015 Polaris RZR 1000, in which the exhaust from a more powerful engine radiates heat into a confined area behind the passengers, which is its Excessive Heat Defect. The fire hazard created by this Excessive Heat Defect in the 2015 Polaris RZR 1000 vehicle is not outweighed by any putative benefits of the design.

28.     On information and belief, despite knowing about the Excessive Heat Defect in its 2013-2016 RZR 1000 vehicles, Polaris Industries Inc. did not timely or adequately correct and/or warn about it. The 2019 NY Times article commented that "When reports of melting and smoking panels in RZRs emerged, Polaris did not heed initial calls to conduct a recall, according to a former safety director for the company who testified in lawsuits, and it later reported far fewer heat-related incidents than he had cited. As new versions were rolled out yearly, each more powerful and faster, the number of fires, injuries and fatalities climbed."

29.     As evidenced by the joint warning statement that the CPSC and Polaris Industries Inc. issued on December 19, 2017, even by that date—over a year after the Pilot Fire had ignited on August 7, 2016—the limited fixes that the manufacturer's recalls had sought to implement up to that date still had not succeeded in resolving the

unacceptably-severe fire hazard created by the defective design of its 2013-2016 RZR 1000 vehicles.

30.    For example, the manufacturer's recalls did not correct the 2015 Polaris RZR 1000 vehicle's defectively-designed engine and exhaust configuration—the Excessive Heat Defect—which does not facilitate heat dissipation in the manner used by most comparable vehicles, including predecessor Polaris models.

31.    The ignition of the Pilot Fire was an incident of a kind that ordinarily does not occur in the absence of someone's negligence.  It was caused by equipment and activity within the exclusive control of Defendants and it was not due to any act on the part of Plaintiff.  Therefore, *res ipsa loquitur* applies to this case.

32.    The Forest Service suppressed the Pilot Fire at substantial cost to the United States.  The Pilot Fire burned approximately 8,110 acres of National Forest System lands on the San Bernardino National Forest in San Bernardino County.

33.    As a result of its efforts to extinguish the Pilot Fire, the Forest Service sustained suppression costs and rehabilitation costs in excess of $11,645,000.

34.    The damages to the United States include, but are not limited to: mitigation, rehabilitation and reforestation of burned areas; loss of and damage to timber, habitat, wildlife, watershed and earth protection; scenic and aesthetic values, and views; environmental damages, loss of use and recreation; soil damage and erosion.

35.    The Forest Service has made demand on Defendant Polaris Industries Inc., and through it, Defendant Polaris Sales Inc., for payment of the costs and damages incurred by the United States to suppress the Pilot Fire and undertake emergency rehabilitation efforts.  Defendants have not paid any part of the sum demanded by the United States.

36.    Causing timber, trees, brush, or grass to burn except as authorized by permit is prohibited by law, including 36 C.F.R. § 261.5(c) and California Public Resources Code § 4421.  Ignition of the Pilot Fire was not authorized by permit or by the United States. Carelessly or negligently causing a fire that is not a prescribed fire that damages

the National Forest System is prohibited by 36 C.F.R. §§ 261.5.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Negligence – Against All Defendants)

37.     Plaintiff realleges paragraphs 1 through 36, inclusive, as though fully and completely set forth herein.

38.     At all times relevant to this action, Defendants Polaris Industries Inc. and Polaris Sales Inc. had a duty to safely design and manufacture the subject RZR 1000, to timely report defects in the product, and once they became aware of the fire danger the RZR 1000 posed, to ensure that the subject RZR 1000 was fully repaired or removed from use.

39.     Defendant Ernest Yanez, Jr. had a duty to properly maintain the subject Polaris RZR 1000 vehicle.

40.     All Defendants had a duty to avoid igniting a wildland fire and damage Forest Service property in accordance with California Public Resources Code §§ 4421 and 4422, California Health & Safety Code § 13001, and 36 C.F.R. § 261.5.

41.     Defendants Polaris Industries Inc. and Polaris Sales Inc. failed to properly design the subject vehicle, failed to adequately warn about its Excessive Heat Defect, and failed to adequately repair or remove the subject vehicle from use after becoming aware of the significant fire hazard it posed.

42.     On information and belief, Defendant Ernest Yanez, Jr. breached his duty of care to properly maintain the subject Polaris RZR 1000.

43.     All defendants were negligent in causing the Pilot Fire, including, but not limited to, their failure to prevent damage to the land and property of the United States, and to take reasonable precautions to prevent and suppress fires.

44.     Defendants' negligent acts, omissions, and violations of law caused the Pilot Fire to ignite and proximately caused the damages the United States sustained.

45.     *Res ipsa loquitur* applies to this case and establishes Defendants'

10

1    negligence.

2         46.   Defendants are responsible for all costs and damages caused by their own

3    negligence, including those under common law, and California Civil Code § 1714.

4         47.   Defendants' negligence, through their agents and employees, was the

5    proximate cause of the Pilot Fire.

6         48.   As a result of Defendants' negligence, the United States incurred damages

7    in an amount to be established at trial.  Defendants are liable for such damages.

8                        **SECOND CLAIM FOR RELIEF**

9              **(Cal. Health & Safety Code §§ 13001, 13007-13009.1,**

10            **and California Civil Code § 3287 – Against All Defendants)**

11        49.   Plaintiff realleges paragraphs 1 through 48, inclusive, as though fully and

12   completely set forth herein.

13        50.   On or about August 7, 2016, Defendants, individually and collectively,

14   negligently and/or in violation of law, ignited the Pilot Fire, thereby setting fire to or

15   allowing fire to be set to National Forest System lands within the San Bernardino

16   National Forest.

17        51.   The Pilot Fire destroyed property of the United States, and caused the

18   United States to incur fire suppression costs, rehabilitation costs, resource damages, and

19   other damages, including damages to the environment, to be established at trial.

20   Defendants are liable for all damages to the United States resulting from the Pilot Fire,

21   including without limitation, its fire suppression costs, damages for injury to federal

22   property, and the United States' administrative, investigative, accounting, and collection

23   costs, under California Health & Safety Code §§ 13001, 13007-13009.1, and California

24   Civil Code § 3287, in an amount to be established at trial.

25

26

27

28

**THIRD CLAIM FOR RELIEF**

**(Cal. Health & Safety Code § 4421 and 36 C.F.R. § 261.5 – Against All Defendants)**

52.     Plaintiff realleges paragraphs 1 through 51, inclusive, as though fully and completely set forth herein.

53.     On or about August 7, 2016, Defendants, individually and collectively, negligently and/or in violation of law, ignited the Pilot Fire, thereby setting fire to or allowing fire to be set to National Forest System lands within the San Bernardino National Forest.

54.     Defendants set fire to National Forest System lands without the permission of the owner of that land, the United States.

55.     Defendants failed to maintain control of the Pilot Fire.

56.     The Pilot Fire destroyed property of the United States, and caused the United States to incur fire suppression costs, rehabilitation costs, resource damages, and other damages, including damages to the environment, to be established at trial. Defendants are liable for all damages to the United States resulting from the Pilot Fire, including without limitation, its fire suppression costs, damages for injury to federal property, and the United States' administrative, investigative, accounting, and collection costs, in an amount to be established at trial.

**FOURTH CLAIM FOR RELIEF**

**(Trespass by Fire – Against All Defendants)**

57.     Plaintiff realleges paragraphs 1 through 56, inclusive, as though fully and completely set forth herein.

58.     On or about August 7, 2016, Defendants, individually and collectively, negligently and/or in violation of law, ignited the Pilot Fire, thereby setting fire to or allowing a fire to be set to National Forest System lands within the San Bernardino National Forest.

59.     The Pilot Fire damaged and destroyed property of the United States, including causing damage to approximately 8,110 acres of National Forest System lands

on the San Bernardino National Forest in San Bernardino County.

60.     As a result of the Pilot Fire's trespass upon the National Forest System lands, the United States has incurred damages in an amount to be established at trial, including but not limited to fire suppression costs, costs to rehabilitate the area, wrongful injury to plaintiff's trees, timber and vegetation damage, the costs for reforestation of the area, environmental damages, damages to the habitats of wildlife in the area.  Defendants are also liable to plaintiff for wrongful injury to its timber, trees and underwood pursuant to California Civil Code § 3346.  Defendants are liable for such damages.

**FIFTH CLAIM FOR RELIEF**

**(Strict Product Liability – Against Defendants Polaris Industries Inc. and Polaris Sales Inc.)**

61.     The United States realleges paragraphs 1 through 60 inclusive, as though fully and completely set forth herein. On information and belief, the United States was harmed by the subject Polaris RZR 1000 while it was being used in an intended or reasonably foreseeable manner, which vehicle was manufactured, distributed and sold by Defendants Polaris Industries, Inc. and Polaris Sales, Inc.

62.     On information and belief, the subject Polaris RZR 1000 was defectively designed insofar as its Excessive Heat Defect is a design defect that makes the vehicle unreasonably prone to starting fires. Insofar as it poses a serious fire hazard, the subject vehicle did not perform as safely as an ordinary consumer would have expected. The Excessive Heat Defect also does not provide any benefits that outweighs the inherent risks that its fire hazard presents to the public, including property owners.

63.     On information and belief, Defendants Polaris Industries Inc. and Polaris Sales Inc. were integral in the marketing enterprise for the subject Polaris RZR 1000 vehicle.

64.     On information and belief, Defendants Polaris Industries Inc. and Polaris Sales Inc. placed the subject Polaris RZR 1000 on the market for sale, knowing that it contained a defective design, without including sufficient instructions and warnings

when it left Defendants' possession, and this failure to adequately and accurately warn about the product's fire hazard was a substantial factor in causing the Pilot Fire. This failure to warn by Defendants Polaris Industries Inc. and Polaris Sales Inc. constitutes a warning defect.

65.    On information and belief, the subject Polaris RZR 1000 vehicle had fire hazard risks created by its defective design that were known or knowable at the time of its manufacture, distribution and sale; the potential risks presented a substantial danger when the vehicle was used or misused in an intended or reasonably foreseeable way; ordinary consumers would not have recognized these risks; and Defendants Polaris Industries Inc. and Polaris Sales Inc. failed to adequately warn or instruct of the risks. Plaintiff was harmed by the product and, on information and belief, the lack of sufficient warnings and instructions was a substantial factor in causing the Pilot Fire.

66.    On information and belief, Defendant Polaris Industries Inc. and Polaris Sales Inc. were aware that similar Polaris RZR 1000 vehicles, other Polaris RZR vehicles, and other Polaris vehicles with the same or similar engine and exhaust design as the subject vehicle had caused multiple fires prior to the sale of the subject vehicle to Defendant Ernest Yanez, Jr.

67.    Defendants Polaris Industries Inc. and Polaris Sales Inc. are liable to the United States for the damages caused by the Pilot Fire.

68.    The United States has demanded that Defendant Polaris Industries Inc., and through it Defendant Polaris Sales Inc., pay the costs and damages incurred by the United States due to the Pilot Fire. Defendants have not paid any part of the sum plaintiff demanded.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

1.    For damages in an amount to be determined at trial against Defendants for fire suppression costs, resource damages and other recoverable costs and damages arising from the Pilot Fire (including, but not limited to, the costs of rehabilitation,

restoration and reforestation of the burned areas, wrongful injury to Plaintiff's trees, loss of timber and vegetation, loss of habitat and environmental damages, damage to the soil, and loss of use, scenic views, aesthetic values as proven at trial), investigation costs and administration costs, plus interest and penalties, in an amount to be determined at trial as allowed under the law;

      2.    For double or triple damages for wrongful injury to Plaintiff's timber, trees and underwood pursuant to California Civil Code § 3346;

      3.    For damages in an amount to be determined at trial against Defendants for damage to real and personal property and any interest allowable under the law;

      4.    For damages in an amount to be determined at trial against Defendants for the sum of reasonable administrative costs incurred as a result of the Pilot Fire and any interest allowable under the law;

      5.    For costs of this action; and

      6.    For such other and further relief as the Court deems just and proper.

Dated:  February 3, 2020

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

       /s/
KEVIN B. FINN
Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
AARON C.G. CARPENTER
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff United States hereby demands a jury trial in this case.

3

4

5    Dated:  February 3, 2020                    Respectfully submitted,

6                                               NICOLA T. HANNA
                                                United States Attorney
7                                               DAVID M. HARRIS
                                                Assistant United States Attorney
8                                               Chief, Civil Division
                                                JOANNE S. OSINOFF
9                                               Assistant United States Attorney
                                                Chief, General Civil Section
10
                                                    /s/
11                                              KEVIN B. FINN
                                                Assistant United States Attorney
12
                                                Attorneys for Plaintiff
13                                              United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28