NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEVIN B. FINN (Cal. Bar No. 128072)
Assistant United States Attorney
DANIEL A. BECK (Cal. Bar No. 204496)
AARON C.G. CARPENTER (Cal. Bar No. 273446)
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-2574
        Facsimile: (213) 894-7819
        E-mail: kevin.finn@usdoj.gov
                daniel.beck@usdoj.gov
                aaron.carpenter2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>POLARIS INDUSTRIES, INC.,<br>POLARIS SALES, INC., ERNEST<br>YANEZ, JR., and Does 1 to 10,<br><br>       Defendants. | No. 2:19-cv-006830-ODW-KS<br><br>**PLAINTIFF'S OPPOSITION TO MOTION BY DEFENDANTS POLARIS INDUSTRIES INC. AND POLARIS SALES INC. TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Hearing Date:  March 30, 2020<br>Hearing Time:  1:30 p.m.<br>Courtroom:    5D, in First Street,<br>               Courthouse<br><br>The Honorable Otis D. Wright II<br>United States District Judge |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.     INTRODUCTION AND SUMMARY ......................................................1

II.    SUMMARY OF RELEVANT ALLEGATIONS OF THE FIRST
       AMENDED COMPLAINT ................................................................3

III.   ARGUMENT ...................................................................................6

       A.     Claim 2 Should Not Be Dismissed Because Cal. Health & Safety
              Code §§ 13001 and 13007-13009.1 Authorize An Agency's Recovery
              Of Fire Suppression Costs Where (As With Polaris) The Defendant
              Negligently Or In Violation Of Law Sets A Fire Or Allows A Fire To
              Be Set.....................................................................................6

       B.     Claim 3 Should Not Be Dismissed Because California Public
              Resources Code § 4421 and 36 C.F.R. § 261.5 Apply to Polaris's
              Defective Product Causing a Fire on Federal Lands....................12

              1.     The United States Has Properly Pled A Claim Against Polaris For
                     Violation Of Cal. Pub. Res. Code § 4421

              2.     The United States Has Properly Pled A Claim That Polaris Violated
                     36 C.F.R. § 261.5

IV.    CONCLUSION..........................................................................166

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3

Page(s)

4
<u>Attain Specialty Ins. Co. v. Slocum</u>, No. CV 19-0247 AWI,
2019 WL 6918273 (E.D. Cal. Dec. 19, 2019)..........................................15

5

6
<u>Department of Forestry and Fire Protection v. Howell</u>,
18 Cal. App. 5th 154 (2017) ...................................................................12

7
<u>Dep't of Forestry & Fire Protection v. Lawrence Livermore Nat'l Security, LLC</u>,
239 Cal. App. 4th 1060 (2015) ...............................................................10

8

9
<u>Lambert v. General Motors</u>,
67 Cal. App. 4th 1179 (1998)....................................................................8

10
<u>O'Neil v. Crane Co.</u>,
53 Cal. 4th 335 (2012) ...............................................................................7

11

12
<u>People v. Morse</u>, No. A103447,
2005 WL 240786 (Cal. Ct. App. Jan. 31, 200)...................................10,15

13
<u>Presbyterian Camp & Conf. Centers, Inc. v. Sup, Court of Santa Barbara County</u>,
42 Cal. App. 5th 148 (2019)...........................................................passim

14

15
<u>Robinson v. United States</u>,
175 F. Supp. 2d 1215 (E.D. Cal. 2001) ...............................................14,15

16
<u>Sequus Pharm., Inc.</u>,
631 F.3d 1133 (9th Cir. 2011) ................................................................13

17

18
<u>Sindell v. Abbott Laboratories</u>,
26 Cal. 3d 588 (1980) ................................................................................7

19
<u>Soule v. General Motors Corp.</u>,
8 Cal. 4th 548 (1994).................................................................................7

20

21
<u>State of California v. Southern Pacific Co.</u>,
184 Cal. Rptr. 271 (1982)...................................................................10, 15

22
<u>United States v. Al-Shawaf</u>, No. 5:15-cv-01539-ODW (SPx),
2018 WL 4501108 (C.D. Cal. September 19, 2018) ..........................passim

23

24
<u>United States v. C.I.P. Inc.</u>, No. CV 08-0556 JP,
2009 WL 10670407 (D.N.M. July 13, 2009) .........................................16

25
<u>Ventura County v. Southern California Edison Co.</u>,
85 Cal. App. 2d 529 (1948) ......................................................................9

26

27

28

**<u>STATUTES</u>**

Cal. Health & Safety Code § 13001 ........................................................2, 5, 10

Cal. Health & Safety Code § 13007 ..................................................................6

Cal. Health & Safety Code § 13009(a) ..........................................................12

Cal. Health & Safety Code § 13009 ............................................................2,6, 7

Cal. Pub. Resources Code § 4101 ..................................................................13

Cal. Pub. Resources Code § 4421 ...........................................................passim

**<u>REGULATIONS</u>**

26 C.F.R. § 261.5 .............................................................3, 13, 15, 16

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.   INTRODUCTION AND SUMMARY**

3

The United States brings this case to recover its damages from the Pilot Fire. The

4

wildfire ignited on August 7, 2016, when a 2015 Polaris RZR 1000 off road vehicle that

5

was designed, manufactured, and sold by defendants Polaris Industries Inc. and Polaris

6

Sales Inc. (collectively "Polaris") burst into flames while being driven in a national

7

forest, igniting the surrounding vegetation.

8

Polaris moved to dismiss the United States' original complaint, claiming it lacked

9

sufficient allegations about why Polaris's product was defective. [Dkt. no. 27]. To move

10

the case forward, the United States filed its First Amended Complaint ("FAC"). [Dkt. no.

11

28]. The FAC explained the defective design of Polaris's RZR vehicle, which makes it

12

unreasonably prone to burst into flames when driven. The FAC cited how Polaris had

13

issued multiple recall notices for the RZR over the years, including one in which Polaris

14

admitted that "Polaris has received more than 160 reports of fires with the recalled RZR

15

ROVs, resulting in one death of a 15 year old passenger from a rollover that resulted in a

16

fire and 19 reports of injuries, including first, second, and third degree burns." The FAC

17

noted that the U.S. Consumer Product Safety Commission had subjected Polaris

18

Industries Inc. to a $27 million civil penalty—its largest ever—charging Polaris of

19

failing to timely report to Federal regulators the manufacturer's knowledge about the

20

serious fire hazard these vehicles pose. The FAC cited a September 19, 2019 New York

21

Times article, entitled "The Polaris RZR, an Off-Road Thrill That Can Go Up in

22

Flames," which discusses at length the serious fire hazard posed by Polaris's defective

23

RZR vehicle, as well as the civil litigation it has generated.

24

No longer feigning uncertainty as to why it faces claims for negligence (Claim 1)

25

trespass by fire (Claim 4) and strict product liability (Claim 5), Polaris has filed another

26

motion to dismiss [Dkt. no. 29], which challenges only Claims 2 and 3 of the FAC.

27

Claim 2 is for violation of Cal. Health & Safety Code §§ 13001 and 13007-

28

13009.1. Although Polaris's MTD requests dismissal of the entirety of Claim 2, its

1

arguments are directed only at the United States' claim for recovery of its fire suppression costs pursuant to Cal. Health & Safety Code §§ 13009 and 13009.1. Recognizing that California state and federal courts have affirmed that a public agency may recover under these statutes when a defendant's *negligently-maintained and/or operated equipment* causes a fire, Polaris contends that such liability is nonetheless barred when the corporation's *negligently-designed and/or defective product* causes a fire. Polaris does not cite any case, point of legislative history, or statutory language indicating that the California statutes should be construed in that contrived manner. Cf. U.S. v. Al-Shawaf, No. 5:15-cv-01539-ODW (SPx), 2018 WL 4501108 (C.D. Cal. September 19, 2018) (rejecting argument that this statutory language excludes common law negligence principles); Presbyterian Camp & Conf. Centers, Inc. v. Superior Court of Santa Barbara County, 42 Cal. App. 5th 148 (2019) ("It would be contrary to the Legislature's intent if we were to conclude that corporations are not among the wrongdoers required to pay for fire suppression and investigation costs. They are."). California's product liability law does not treat a defective product as an instrumentality beyond its manufacturer's control, and Polaris's attempted distinction has no support in statutory language, case law, legislative history, or reason.

As to Claim 3, Polaris claims that (1) Cal. Public Resources Code § 4421 only applies to intentionally-set fires; and (2) 26 C.F.R. § 261.5 does not apply to fires caused by wrongful conduct outside of Federal lands. Polaris's narrow interpretation of California Public Resources Code § 4421 should be rejected, as the statute's language broadly provides that a person "shall not set fire or cause fire to be set to any forest," without requiring deliberate intent to ignite a fire. Similarly, Polaris's argument regarding 26 C.F.R. § 261.5 should be rejected, since Plaintiff's FAC alleges that Polaris's defective product started the Pilot Fire on Federal land.

Accordingly, Polaris's motion should be denied, and this action should proceed.

## II. SUMMARY OF RELEVANT ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Forest Service Investigators determined that the Pilot Fire ignited on August 7, 2016 when defendant Ernest Yanez, Jr.'s 2015 Polaris RZR 1000 recreational off-road vehicle malfunctioned and caught on fire while being driven on a National Forest System trail. [FAC ¶¶ 6-7]. The resulting fire burned, damaged, and destroyed approximately 8,110 acres of the San Bernardino National Forest. Id.

Polaris's RZR vehicle had a long history of overheating and starting fires due to its defective design. [FAC ¶ 9]. Polaris's RZR vehicles were designed in a way that makes them unreasonably prone to bursting into flames while being driven, even without a collision or rollover. [FAC ¶ 10]. The vehicle's Excess Heat Defect consists of a new design in which an unusually powerful engine is located in a tight space with restricted airflow. [FAC ¶ 25]. The engine's exhaust manifold and header pipe exit the engine going forward towards the occupants, radiating intense heat into a confined area. Id. Surrounding components of the vehicle, including vulnerable and/or combustible plastic, have little clearance from the hot exhaust and a complex series of heat shields that are intended to ameliorate the heat problems, but which have failed to prevent its unacceptably severe fire risk. Id. This makes the Polaris RZR vehicle unreasonably prone to igniting any combustible material that may be located nearby or adjacent to the exhaust region, including the vehicle's own fuel system components. [FAC ¶ 26].

In April of 2016, Polaris issued a recall notice in conjunction with the U.S. Consumer Product Safety Commission (CPSC) for 133,000 Polaris Model Year 2013-2016 RZR 900 and RZR 1000 vehicles. [FAC ¶ 12]. In that announcement, Polaris admitted that "Polaris has received more than 160 reports of fires with the recalled RZR ROVs, resulting in one death of a 15 year old passenger from a rollover that resulted in a fire and 19 reports of injuries, including first, second, and third degree burns." [FAC ¶ 12]. Attempting to mitigate the vehicle's fire hazard, Polaris has issued recalls over the years to replace its fuel vent line, voltage regulator, fuse box seal, and heat shield, as

3

1  well as an ECU calibration update. [FAC ¶ 11].

2      The product changes advocated by Polaris's April 2016 recall notice did not fix

3  the vehicle's fire hazard problems, however. On September 16, 2016, Polaris Industries

4  Inc. issued an update to its 2016 full-year guidance in which the company stated that

5  "[s]ince Polaris last updated its full-year guidance and hosted its investor day in July [of

6  2016], the Company has experienced additional RZR thermal-related issues and was

7  unable to sufficiently validate the initially identified RZR Turbo recall repair,

8  necessitating a more complex and expensive repair solution. As a result, the voluntary

9  stop ride/stop sale notification issued on July 25, 2016, remained in place significantly

10  longer than originally anticipated, delaying any sales of the highly-requested RZR Turbo

11  vehicle. Also, given the additional RZR thermal issues, the Company revalidated many

12  of its recently introduced model year 2017 ORV products, causing a delay in shipments

13  of those vehicles." [FAC ¶ 14].

14      On December 19, 2017, the U.S. CPSC issued a joint statement with Polaris

15  Industries Inc., giving additional warnings about the RZR vehicles' continuing fire

16  hazard. [FAC ¶ 15]. The joint statement warned that "[t]he U.S. Consumer Product

17  Safety Commission (CPSC) and Polaris are informing the public about fires on model

18  year 2013–2017 Polaris RZR 900 and 1000 Recreational Off-Highway Vehicles (ROVs).

19  These fires have caused death, serious injuries and property damage. Most of these

20  vehicles were voluntarily recalled by Polaris in April 2016 to address fire hazards …

21  However, users of the vehicles that were repaired as part of the April 2016 recall

22  continue to report fires, including total loss fires. The 2017 RZRs were not included in

23  the April 2016 recall, but these models have also experienced fires. The CPSC and

24  Polaris continue to work together to ensure fire risks in these vehicles are addressed."

25  This joint statement was issued over a year after the Pilot Fire. Id.

26      In 2018, the U.S. CPSC subjected Polaris Industries Inc. to a $27 million civil

27  penalty for having failed to timely notify the agency about the dangers posed by its RZR

28  and Ranger vehicles. [FAC ¶ 16]. The CPSC contended that the RZRs were defective

4

insofar as they had an unreasonable risk of catching fire while consumers were driving them. Id. The CPSC charged Polaris with having received information that its RZR vehicles could catch fire while consumers were driving them, posing fire and burn hazards. Id. The CSPC contended that despite having information that reasonably indicated that the RZRs contained a defect that could create a substantial product hazard or create an unreasonable risk of serious injury to or death, Polaris failed to immediately notify CPSC of the defect or risk posed by its vehicles, as federal law had required. Id.

The fire hazard presented by the defective design of the Polaris RZR vehicle has drawn widespread media attention and civil litigation. [FAC ¶¶ 19-24]. On September 6, 2019, the New York Times published an article entitled "The Polaris RZR, an Off-Road Thrill That Can Go Up in Flames: The Polaris RZR, a vehicle for recreational use, has been linked to scores of fires and four deaths. But its maker insists it is safe." [FAC ¶ 19]. The Times article included a photograph of an RZR vehicle burning in an incident that caused third-degree burns to its driver. Id.



The New York Times article discussed the RZR vehicle's fire risk and design problems in detail. [FAC ¶¶ 19-23].

As the 2019 New York Times article reported, "From 2013 to 2018, Polaris Industries issued RZR recalls 10 times for fire hazards, far more than for any competing

5

1  product. There have been more than 180 RZR fires, often leaving little more than
2  scorched earth and a skeletal metal frame. Four people have been killed and at least 30
3  others have been burned, according to a tally from recalls, lawsuits and reports to federal
4  regulators." [FAC ¶ 20].

5      In sum, the FAC alleges that the Pilot Fire was caused by this design defect in the
6  Polaris RZR 1000 vehicle that defendant Yanez was driving on Federal land.

7  **III.  ARGUMENT**

8      **A.  Claim 2 Should Not Be Dismissed Because Cal. Health & Safety Code**
9          **§§ 13001 and 13007-13009.1 Authorize An Agency's Recovery Of Fire**
          **Suppression Costs Where (As With Polaris) The Defendant Negligently**
10         **Or In Violation Of Law Sets A Fire Or Allows A Fire To Be Set.**

11     Although Polaris's motion requests dismissal of Claim 2 in its entirety, this Claim
12  includes the allegation that Polaris has violated Cal. Health & Safety Code § 13007, a
13  statute giving property owners the right to recover for damages that a fire has caused to
14  their property.[1] Polaris's moving papers make no arguments about why the United States
15  has not pled a claim under Section 13007.

16     Instead, Polaris's motion is directed at a subset of Claim 2:  The United States'
17  allegation that Polaris has violated Cal. Health & Safety Code §§ 13009 and 13009.1.
18  These statutes provided that public agencies may recover their *fire suppression and*
19  *investigation costs*. Specifically:

20     (a)  Any person (1) who negligently, or in violation of the law, sets a fire,
21     allows a fire to be set, or allows a fire kindled or attended by him or her to
       escape onto any public or private property….. is liable for the fire
22     suppression costs incurred in fighting the fire and for the cost of providing
23     rescue or emergency medical services, and those costs shall be a charge
24     against that person. The charge shall constitute a debt of that person, and is

25  _____
   [1]    Cal. Health & Safety Code § 13007 provides for a property owner's recovery of
26  damages caused by a fire: "Any person who personally or through another wilfully,
27  negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire
   kindled or attended by him to escape to, the property of another, whether privately or
28  publicly owned, is liable to the owner of such property for any damages to the property
   caused by the fire."

collectible by the person, or by the federal, state, county, public, or private agency, incurring those costs in the same manner as in the case of an obligation under a contract, expressed or implied.

§ 13009. Section 13009.1 uses essentially the same liability standard, but also gives the agency a right to recover its fire investigation and administrative costs.

These statutes facially apply to the United States' claims against Polaris. The United States' First Amended Complaint alleges that Polaris negligently set, and/or allowed to be set, the Pilot Fire through the sale of its defective RZR product. California's product liability law incorporates normal legal causation. It requires proving that the injury was *caused by the defendant's act or by an instrumentality under the defendant's control*. "It is fundamental that the imposition of liability requires a showing that the plaintiff's injuries were caused by an act of the defendant or an instrumentality under the defendant's control." O'Neil v. Crane Co., 53 Cal. 4th 335, 349 (2012) (citing Sindell v. Abbott Laboratories, 26 Cal. 3d 588, 597 (1980)). As Sindell explained, "[t]he rule [of proving causation] applies whether the injury resulted from an accidental event or from the use of a defective product." 26 Cal. 3d at 597-98. The limitation is foreseeability. "A manufacturer, distributor, or retailer is liable in tort if a defect in the manufacture or design of its product causes injury while the product is being used in a reasonably foreseeable way." Soule v. General Motors Corp., 8 Cal. 4th 548, 560 (1994). Accordingly, "[a] manufacturer is liable only when a defect in its product was a legal cause of injury." Id. 572. Notably, "[w]here liability depends on the proof of a design defect, no practical difference exists between negligence and strict liability; the claims merge." Lambert v. General Motors 67 Cal. App. 4th 1179, 1185 (1998).

Polaris thus misses the mark in arguing that "[i]n every case counsel uncovered where a court imposed liability against a corporate defendant for fire-suppression and investigation costs under these sections, either (1) the corporation had control of the instrumentalities that caused the fire or (2) its employees or agents were physically present, and their negligence contributed to the fire." (MTD at 6). With product liability,

7

1   the defendant causes the injury by its own acts or an instrumentality under its control.

2   That is why they are liable. This causation does not go away because a consumer

3   purchased and used its product, any more than placing a bomb in an unwitting person's

4   luggage absolves one of responsibility for causing the subsequent distant explosion. The

5   bad actor in that scenario may not have been physically present at the site, but his

6   wrongful actions still either blew up the target or let it be blown up. Polaris's conduct in

7   wrongfully causing the Pilot Fire falls squarely under the "negligently, or in violation of

8   the law, sets a fire, allows a fire to be set …" language of § 13009(a).

9        This plain meaning of the statutory language is strongly supported by the cases

10   that have interpreted the scope of §§ 13009 and 13009.1. This Court recently discussed

11   these two statutes at length in <u>Al-Shawaf</u>, <u>supra</u>, 2018 WL 4501108, which analyzed the

12   peculiar decision of <u>Department of Forestry and Fire Protection v. Howell</u>, 18 Cal. App.

13   5th 154 (2017) ("<u>Howell</u>"). Noting that §§ 13009 and 13009.1 do not include the phrase

14   "personally or through another" that appears in § 13007, <u>Howell</u> opined that §§ 13009

15   and 13009.1 must exclude vicarious liability—meaning corporations could not be held

16   liable for their employees' negligence.

17        Disagreeing, this Court explained that "[t]his Court declines to follow the decision

18   set forth in *Howell*. Doing so would require the Court to ignore the plain meaning of

19   sections 13009 and 13009.1 (including the definition section of the California Health and

20   Safety Code) and would require the Court to ignore several other California appellate

21   cases contrary to *Howell*'s holding." 2018 WL 4501108 at *8. The Court noted that "the

22   plain meaning of California Health and Safety Code sections 13009 and 13009.1 is

23   unambiguous and contemplates vicarious liability." <u>Id</u>. Specifically, Cal. Health and

24   Safety Code § 19 defines a person to include "any person, firm, fir m, association,

25   organization, partnership, business trust, corporation, limited liability company, or

26   company." <u>Id</u>. Since corporations necessarily act through their employees and agents, to

27   find that they cannot be vicariously liable would require ignoring the plain meaning of

28   §§ 13009 and 13009.1. <u>Id</u>.

The Court observed that the language of §§ 13009 and 13009.1 does not have a preclusive effect on common law negligence principles:

> The Court is further guided by the decisions of other California appellate court decisions. Not only did these other decisions allow vicarious liability, but they also allowed other causes of action based on the so-called common law negligence principles. The Court does not disagree with *Howell*'s interpretation of negligently in that it is an adverb modifying three potential phrases: "(1) sets a fire, (2) allows a fire to be set, or (3) allows a fire kindled or attended by him or her to escape." However, reading the word negligently in this way does not result in a preclusive effect on common law negligence principles. A person who is found to have negligently "supervised, managed, hired, or inspected" could be sufficient for a finding that a person negligently "allows a fire to be set" or "allows a fire kindled or attended by him or her to escape," satisfying sections 13009(a)(2) or 13009.1(a)(2).

Id. Case law makes these principles amply clear.

In Ventura County v. Southern California Edison Co., 85 Cal. App. 2d 529 (1948), the defendant contended that the plaintiff's fire suppression costs could only be recovered when the fire was caused "by defendant's direct and affirmative act … whereas the [jury] findings show only negligent construction and maintenance which indirectly caused the fire." Id. at 532. But the Court of Appeals rejected the defendant's contention that such a limitation to "direct and affirmative act[s]" should be read into the California statute, holding instead that the statutory language encompassed "negligent acquiescence in, or failure to prevent known conditions, circumstances, or conduct which might reasonably be expected to result in the start of a fire." Id. Accordingly, the defendant's failure to construct and maintain its equipment was sufficient for liability. Id. at 532-33. Whether the wrongful actor had failed to maintain its own equipment, or had failed to properly supervise or oversee a more direct actor, thus made no difference to whether fire suppression costs were recoverable under the California statutes. See Al-Shawaf, 2018 WL 4501108 at *9 (discussing Ventura County).

A similar result was reached in Dep't of Forestry & Fire Protection v. Lawrence Livermore Nat'l Security, LLC, 239 Cal. App. 4th 1060 (2015). Lawrence Livermore

9

LLC was an "operating contractor" that was legally obligated to maintain a power line which it did not own on land that it did not own (specifically, at the Lawrence Livermore National Laboratory, a separate legal entity). The Court of Appeals affirmed that Cal. Fire had a right to recover its fire suppression costs against Lawrence Livermore LLC, insofar as the LLC's negligent maintenance of the power line had caused a fire.

> The negligence underlying the section 13009/13009.1 right to recover fire costs has been broadly defined to extend to a negligent acquiescence in, or a negligent failure to prevent, known conditions, circumstances, or conduct that might reasonably be expected to result in the starting of a fire.

Lawrence Livermore, 239 Cal.App.4th at 1069 (citing County of Ventura, 85 Cal.App.2d at 532). Since the operating LLC had a *legal duty* to maintain the power line, and its *wrongful failure to act properly* in that regard was a substantial cause of the fire, these statutes—which incorporated a "broadly defined" scope of negligence—were applicable. The same is true of Polaris's obligation, as a product manufacturer, to design and sell safe products—a duty it negligently breached by causing the Pilot Fire.

The original cause of the fire was uncertain in People v. Southern Pacific Co., 139 Cal. App. 3d 627 (1982). The California Court of Appeals nonetheless affirmed a judgement for fire suppression cost recovery when the negligence theory relied upon was "for failing to suppress the fire because of negligent maintenance or operation of the fire extinguisher, and for failure to clear combustible vegetation from the right-of-way in the area where the fire started." Id. at 633. The defendant had not itself directly set the fire, but its negligence in maintaining fire suppression equipment and clearing combustible vegetation had either caused the fire or allowed it to spread beyond the property. That was sufficient for cost suppression recovery to be awarded.

The only case suggesting that §§ 13009 and 13009.1 require a heightened level of directness appears to be Howell. But Howell was not a product liability case. And not only did this Court determine in Al-Shawaf that Howell had incorrectly interpreted these statutes, the same conclusion was later reached in Presbyterian Camp, supra. There, the California Court Of Appeals rejected the idea that the California's fire suppression cost

10

recovery statutes do not permit vicarious liability, noting that "[c]orporations are never direct actors," and "[t]he electric utility did not negligently construct and maintain its power lines; its employees did. The *Howell* majority's assertion that sections 13009 and 13009.1 permit corporate liability when corporations are 'direct actors' is a legal impossibility." 42 Cal. App. 4th at 164. The legislative history of the statutes confirms that they encompass vicarious liability, and that the inherently indirect nature of corporate action does not render these cost recovery statutes inapplicable. Id.

California's Supreme Court has recently granted a petition for review of Presbyterian Camp. See 2020 WL 370298 (memo). Plaintiff anticipates that California's Supreme Court will affirm the decision of the California Court of Appeals in Presbyterian Camp, correcting the aberrant earlier Howell opinion.

Without citing any statutory language or California case law that would support its proffered distinction, Polaris nonetheless suggests that fire suppression cost liability can only attach if (1) the corporation's employee or agent was physically present when the fire starts (despite the power line cases); or (2) the corporation "owned, operated, or maintained the vehicle that allegedly contributed to the fire" (MTD at 6-7). Polaris attempts to distinguish the latter situation from a corporation—like itself—that caused the fire by *negligently designing and building* the defective vehicle. But the statutory language does not support Polaris's claim that §§ 13009 and 13009.1 must treat differently (a) the negligent operation and/or maintenance of equipment that causes a fire and (b) the negligent design and/or manufacture of equipment that causes a fire. The California statutes simply require proving that the defendant "negligently, or in violation of the law, sets a fire, allows a fire to be set …" Cal. Health & Safety Code § 13009(a). And California courts have held that a defendant's negligence regarding equipment that later causes a fire is sufficient to fall within this statutory language; it does not purport to require more than negligence that causes a fire or allows a fire to be set.

Polaris asserts that its counsel has not found another reported case in which product liability was the basis for awarding cost recovery under §§ 13009 and 13009.1.

11

That is not surprising, given the corresponding difficulty in finding any other manufacturer that has put products on the market that so frequently burst into flames when the consumer does not expect it.[2] Polaris is a marked outlier in that regard, and cases analyzing these two California statutes are not particularly frequent.

Polaris also does not explain why California's legislature would have carved out an exception for product liability. It makes no sense to exonerate manufacturers from liability for the fires that their defective products cause, while simultaneously holding corporations liable for other negligence that causes fires (whether by direct action or by inaction in the face of legal duty). As this Court explained in <u>Al-Shawaf</u>, <u>supra</u>, and the California Court of Appeals echoed in <u>Presbyterian Camp</u>, <u>supra</u>, the legislative history and statutory context does not support the idea that California's legislature desired to give bad-acting corporate defendants a free pass, relative to those non-corporate defendants whose wrongful conduct was a substantial cause of the fire.

Accordingly, Claim 2 should not be dismissed.

## B. Claim 3 Should Not Be Dismissed Because California Public Resources Code § 4421 and 36 C.F.R. § 261.5 Apply to Polaris's Defective Product Causing a Fire on Federal Lands

Polaris argues that Plaintiff's Third Claim for Relief must be dismissed on the theory that (1) Cal. Public Resources Code § 4421 requires the defendant to have had the deliberate intent to set fire to a forest, as opposed to negligently setting fire to a forest; and (2) 26 C.F.R. § 261.5 does not apply to Polaris's out-of-state manufacturing activities. (MTD at p. 13). Polaris's narrow interpretations of this statute and regulation should be rejected. The plain language of § 4421 forbids any person or business from "caus[ing] fire to be set to any forest" without the landowner's permission; it does not require an arson-type intent. Similarly, Polaris's position on 261.5. § 261.5 is wrong, as Plaintiff's FAC expressly alleges that the defective design of Polaris's RZR vehicle

---

[2]     Some products, like camping stoves, are expected to produce flame. Offroad vehicles, by contrast, are not expected to burst into flames while being driven.

12

1    caused the Pilot Fire to ignite on federal land.

2              3.    **The United States Has Properly Pled A Claim Against Polaris**
                     **For Violation Of Cal. Pub. Res. Code § 4421**
3

4         Polaris argues that Cal. Public Resources Code § 4421 applies only to "intentional

5    fires that get out of control." (MTD at p. 8). But § 4421 broadly states as follows:

6         A person shall not set fire or cause fire to be set to any forest, brush, or other
          flammable material which is on any land that is not his own, or under his
7         legal control, without the permission of the owner, lessee, or agent of the
          owner or lessee of the land.
8

9    The plain language of § 4421, which prohibits any person from "caus[ing] a fire to be set

10   to any forest," is much broader than Polaris's narrow interpretation. See Cal. Pub. Res.

11   Code § 4421; Infuturia Glob. Ltd. v. Sequus Pharm., Inc., 631 F.3d 1133, 1137 (9th Cir.

12   2011) (when interpreting the meaning of a statute, the Court looks first to its plain

13   language); see also Cal. Pub. Res. Code § 4101 (broadly defining "person" to include a

14   corporation or company). And the language of section 4421 is not limited to "set[ing]

15   fire." The statutory language explicitly goes further so as to also forbid a person from

16   "caus[ing] fire to be set" to a forest without the landowner's permission—as Polaris did

17   here, when its defective RZR product caused the Pilot Fire on Federal land.

18        Polaris cites a footnote in Robinson v. United States, 175 F. Supp. 2d 1215 (E.D.

19   Cal. 2001) for the proposition that § 4421 applies to prescribed burns that burn a

20   landowner's property without permission.[3] But Robinson did not purport to interpret the

21   statute as *only* applying to prescribed burns; the Robinson footnote simply pointed out

22   that those people who conduct prescribed burns have specific duties pursuant to

23   California law. "California has enacted statutes which specifically impose certain duties

24   on persons conducting prescribed burns. *See* Cal. Pub. Res. Code §§ 4421-4426." Id. at

25   1228 n.10. The statutes cited by this footnote do not all purport to be limited to

26   prescribed burns; they cover prescribed burns among various other types of fires. For

27   _____

28   [3]      See generally https://www.nps.gov/articles/what-is-a-prescribed-fire.htm

                                                    13

example, § 4423.3 addresses campfires, and § 4423.4 addresses smoking.

In fact California's Public Resources Code dedicates an entire Chapter to the "Burning of Lands," which includes sections regarding prescribed burns. *See* Cal. Pub. Res. Code Div. 4, Pt. 2, Ch. 7. By contrast, Section 4421 is located in Chapter 6, which is broadly entitled "Prohibited Activities" and includes numerous subsections regarding different forbidden activities, including generally setting or causing fires without permission (§ 4421), uncontrolled fires (§ 4422), burning state or federal lands (§ 4423), unauthorized, unattended, or uncontrolled camp fires (§§ 4423.1, 4432, 4433, 4434), smoking (§ 4423.4), backfires (§ 4426), operation of engines, machines, or any device that may kindle a fire (§ 4435), certain waste disposal (§§ 4437-40), and using tracers or incendiary ammunition (§ 4445). <u>See</u> Cal. Pub. Res. Code Div. 4, Pt. 2, Ch. 6., Art. 2. In the absence of language limiting the scope of § 4421 to a specific defined subtype of prohibited acts by which the defendant may "set fire or cause fire to be set," it cannot be construed in the narrow fashion that Polaris advocates.

Polaris's remaining argument is that its counsel has not found a case applying § 4421 to "accidental" fires, *i.e.* fires that were ignited because of the defendant's negligence, rather than by a deliberate act of ignition. There appear to be only five California cases addressing § 4421, however. The first two are general citations. <u>See State of California v. Southern Pacific Co.</u>, 184 Cal. Rptr. 271, 274 (1982) ("Public Resources Code section 4435 appears in an article of the Public Resources Code (§ 4421 et seq.) devoted to forest fire hazards."); <u>see also</u> <u>People v. Southern Pacific Co.</u>, 188 Cal. Rptr 913, 916 (1983) (accord). The next two cases are cited in Polaris's moving papers: <u>Robinson</u>, <u>supra</u>, and <u>Attain Specialty Ins. Co. v. Slocum</u>, No. CV 19-0247 AWI (SKOx), 2019 WL 6918273, at *5 (E.D. Cal. Dec. 19, 2019). <u>Attain Specialty</u> referred to § 4421 in passing, explaining that it applied because the fire occurred in a State Responsibility Area. <u>Id.</u> The fifth case is <u>People v. Morse</u>, No. A103447, 2005 WL 240786 (Cal. Ct. App. Jan. 31, 2005), where the defendant accidentally caused a fire by sparks from a generator he was running in Humboldt County—analogous to Polaris's

14

negligent causation of a fire in this case. The <u>Morse</u> defendant was charged with, among other things, violation of § 4421. <u>Id.</u> at *1. That charge was never decided, however, because the defendant pled guilty to three other criminal charges as a plea bargain. <u>Id.</u> Although the issue was not resolved, <u>Morse</u> is thus consistent with the plain language of § 4421 applying to a defendant who negligently causes a fire that burns a forest.

In sum, Polaris cites no authority narrowing the scope of § 4421 in the manner that Polaris now advocates. None of the cases addressing this statute purport to exclude negligent causation of the type involved here. The plain statutory language controls.

4. **The United States Has Properly Pled A Claim That Polaris Violated 36 C.F.R. § 261.5**

Polaris argues that Plaintiff's claim under 36 C.F.R. § 261.5 fails because Polaris manufactures its defective product outside of California. But Plaintiff's FAC expressly alleges that Polaris's defective product caused the Pilot Fire while it was being operated on Federal land; Polaris thus violated 36 C.F.R. § 261.5. <u>See</u> FAC, ¶¶ 7-31, 36.

The Federal regulation prohibits the following: "[c]ausing timber, trees, slash, brush, or grass to burn except as authorized by permit" and "[c]ausing and failing to maintain control of a fire that is not a prescribed fire that damages the National Forest System," 36 C.F.R. § 261.5(c), (e). Polaris argues that this regulation "applies only when the underlying conduct occurred on federal property." (MTD at p. 16). Relative to the broad California statutes discussed above (which do not require that the defendant's wrongful conduct took place on the plaintiff's property), § 261.5 does raise an additional issue, insofar as the Federal regulation applies to wrongful conduct on Federal property. But that is exactly what happened here. Polaris's defectively designed RZR off-road vehicle caused the 8,110 acre Pilot Fire when it burst into flames while being driven through the San Bernardino National Forest, not by bursting into flames somewhere in Minnesota, or at some other location outside of Federal lands. <u>See</u> FAC, ¶¶ 7-31, 36.

In igniting a fire in a national forest, Polaris's wrongful conduct is unlike the conduct in <u>Mendez</u> and <u>Sierra Pacific Industries</u>, cited by Polaris's moving papers,

15

where the fire was wrongfully ignited on land adjacent to a national forest, and thereafter spread into Federal property. Polaris acknowledges that § 261.5 applies when the fire was wrongfully started on Federal land, as with the Pilot Fire. <u>See</u>, <u>e.g.</u>, <u>United States v. C.I.P. Inc.</u>, No. CV 08-0556 JP (ACTx), 2009 WL 10670407, at *2 (D.N.M. July 13, 2009) (fire started on Federal land).

Not only has Plaintiff alleged that Polaris ignited a fire on Federal land with its defective vehicle, it was completely foreseeable that the RZR off-road vehicle would be used in national forests. Indeed, Polaris manufactures and advertises the RZR specifically for its off-road capabilities in such lands. <u>See</u>, <u>e.g.</u>, Polaris Off Road, "Best UTV Trails Throughout America," May 29, 2019, https://offroad.polaris.com/en-us/articles/utv-trails/ (encouraging use of its products on "public or private lands," including "public lands such as national forests.") (last visited March 4, 2020). Polaris should not be able to release a defective product that is intended for operation on private and public lands, including Federal land in California, and hide behind a Midwestern manufacturing plant to evade the reach of 36 C.F.R. § 261.5.

## IV.    CONCLUSION

Polaris's motion to dismiss should be denied.


Dated:  March 9, 2020

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

_/s/ Daniel A. Beck_
DANIEL A. BECK
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

16